and I'm going to let you pronounce your name because if I try I'll mess it up. Good morning judges. My name is Steven Stambalia. I represent the appellants in this matter. I would like to reserve five minutes for rebuttal. Thank you and may it please the court. Briefly I would like to address some housekeeping matters. Since our briefs were filed, one of our cited cases has since been taken in bonk, vacating the lower court's opinion. That was Maryland shall issue v. Moore. In that case, the court held that a 30-day delay on receiving a handgun qualification license was unconstitutional. That has since been vacated. Additionally, in Lara, or Lara depending on how you say it, the commissioner of Pennsylvania State Police, the Third Circuit declined to rehear in bonk the panel opinion that 18-20 year olds are part of the people and that 1791 is the proper historical period to look at for a second amendment analysis. Turning to the merits here, we are here on the denial of a motion for preliminary injunction seeking to enjoin the mandatory 3-10 business day delay when young adults purchase shotguns or rifles. Now, this case is not about whether background checks writ large are constitutional. It is about whether this nation's historical tradition allows a mandatory 3-10 day business delay when a young adult goes to purchase a firearm simply due to their age. I submit to you that the answer is an emphatic no. As a Supreme Court held in Bruin, that in order to be constitutional, regulations on the second amendment must be historically grounded in this nation's history and tradition. In this case, the government failed to demonstrate that this mandatory delay, which is only applicable to 18-20 year olds, is grounded in this nation's history and tradition. Pursuant to New York state right... Where in the second amendment does it mention buying? Well, in order to keep and bear, one would have to acquire that arm and there are other ways to acquire an arm other than buying, but it seems like... So why is that necessarily in play in the second amendment when it's talking about keeping and bearing? Without being able to acquire a firearm, your honor, there's no keeping and bearing. The government would then be able to say, look what a marvelous second amendment loophole we found that we can stop people from keeping and bearing simply because we can stop them from buying. Historically grounded, that's not in our tradition as a nation where we've precluded people from purchasing firearms. Sure, there might be some on the fringes of being able to preclude them, but 18-20 year olds are not allowed to be excluded from the people. They are part of the people and therefore it's unconstitutional to make them wait an additional three to 10 days when NICS, the National Institution... But aren't there other ways to buy besides going to the ones that are licensed by federal commercial? Sure, they could go to the secondary market where they could go buy a used firearm or their parents could give them or gift them a firearm. Right, but we're... Our position... So it's not... I mean, your brief made it sound like they just cannot get a gun and that's not true even ignoring this three to 10 day situation, which is not a never, but can you address that? Why that isn't enough? Sure, well, that presumes that the government's entitled to tell us how to exercise our rights and I submit to you that that's not historically grounded and that's not allowable. So to take a different hypothetical, if the government says, well, Mr. Stamblia, you have a free speech right, but you just can't post anything on Twitter or you have a free speech right, but you can only use Facebook to post anything online, I think the court might have an issue with that and I don't think the Second Amendment is any different when we regulate, relegate, sorry, young adults to the secondary market. Like, for instance, if Mr. McCrory wanted to buy a rifle that was in demand or something that wasn't available on the secondary market, the only opportunity he has to buy it is through an FFL. If he were to get on Gun Broker or one of the other sites, they would ship it to his FFL and then at that point, even if it's a used firearm, he would still have to go through the mandatory delay and background check process. The only alternative would be for him to go to a friend that's willing to sell it to him and then at that point, he doesn't get to choose what type of firearm he's getting, he's just getting a firearm. So I don't think that's really an answer to say that, well, he has the secondary market and he should be relegated to that. Okay, let's assume argument are the only way is going to one of these stores. Can you explain, you know, why the relatively short delay is unconstitutional? Easily, Your Honor, because historically, we have, pursuant to Bruin, we have to check and do a historical analysis to see if the regulation is inconsistent with what the founders thought in 1791 that would apply. And the government, as the district court stated, I think it was record 300, the government failed to point to any specific era, specific founding era regulations that were like this regulation that they put on. And what it does is it treats young adults, 18 to 20 year olds, differently than it treats, you know, someone like me that's 45 years old. So when I go to purchase a gun, I would, you know, get an instant background check. Well, they're not instant for the young adults, there's no historical tradition and it's unconstitutional pursuant to Bruin that requires us to go back and look at the nation's history and tradition. Well, you know, it's interesting because you just talked about the First Amendment on Facebook and I doubt that the 1700s is going to explain Facebook to us. So things, while I very much understand what Bruin is saying and I very much respect that we follow what the Supreme Court says, things do evolve and one of the arguments your opponent made is the evolution has been how you get a gun. You know, they used to be like we'd make one a day and we knew everybody in the city or And so there wasn't this issue. Now, if you're ronding around New York, that's a lot of people and they're making guns, a ton of them, in a short amount of time. So that wasn't the situation then. Sort of like Facebook, as far as I know, I wasn't there in the 1700s, but I don't think Facebook was either. Well, I think that's judicially noticeable that it was not in existence in 1791. But the Constitution endures for new technological advances. It does. And so they cite in their brief, it's like it's a new societal problem, right? But what is this societal problem? Is it gun violence? Well, Heller and Bruin both spoke about gun violence. Justice Breyer in his dissent talked about how the handgun was the most favored weapon of the criminal. Great. Okay. Well, maybe that's so. And then the majority said that it's also the quintessential self-defense weapon. So if Justice Breyer's nod to the criminal misuse of a handgun, I don't want to say mattered because I think that's probably the wrong thing to say, but it didn't carry the day, obviously. So I don't think that we can look at, like Your Honor said, we have new, we have a lot of people, we don't know who everyone is. Well, NICS background checks, the same NICS background check they would run on me or any firearm is the same thing that they run on the 18 to 20 year olds, plus they do extra things. So if- Add additional sources of information. Yes, ma'am. That's correct. But the initial delay is still for three days. The only time you get to the 10 days is if there's more investigation that needs to be done. Well, it's three business days to 10 business days. It's not calendar days, which I think is important because as we know, life also happens on the weekends when the state offices are closed. So it could be three business days, but it could also be five calendar days, six calendar days. Hayden Haines' affidavit that we submitted had 18 days before he was allowed to get his firearm. And I understand the other side is going to come up here and say, well, it's the FFL's prerogative if they want to transfer that firearm after 10 days, 10 business days to the purchaser if they have been delayed. But a lot of people in practice don't do that because the ATF, if that person is ultimately denied, the FFL is going to have to answer why they have this firearm going to someone that's been potentially denied. But you can't trace those discretionary acts of those third parties back to this act. Well, so I would go one step before that, Your Honor, if we disregard the acts of the third party. So in their brief, they said that we can't say that Ms. Flores would have gotten her gun that day. And then they put in their brief that, well, they have an affidavit from the FBI saying that Mr. McCrory passed a background check, Ms. Flores passed a background check. So I would submit to the court on the day that Ms. Flores went to go buy her shotgun, she would have been able to, that day, through a NICS check, the same check that's run on me, be able to pick up her shotgun that day and not have to wait the three to 10 business days and not have some kind of miscommunication between the ATF, I'm sorry, the FBI and the FFL to where, to this day, she still doesn't have her gun. So I know that's probably an outlier case, but that's what's happened in this case. We start with the proposition that the statute is presumptively lawful, and then we also have the acknowledgment in Bruin that background checks are okay under the Second Amendment. So the district court and the FBI lean hard into Heller's dicta about commercial qualifications on the sale of arms and the background check in Bruin footnote 9 and in Kavanaugh's concurrence. However, I'd like to just reiterate to the court that that is for carry permits. That's not for acquiring a firearm, and the court might say, well, that's not really different. It's still background checks on a firearm, but we have to make sure the how and the why of the regulation match. So the how and why of Bruin footnote 9 is for carry permits, where a lot of those states don't actually require you to be licensed to carry. I know Louisiana is going permitless, I think, July 1st, Mississippi, where I'm from, has been permitless. Texas is going permitless. So I don't think that we can say just writ large that all background checks are constitutional. You'll notice in Bruin they did not do a historical analysis on whether or not background checks are constitutional. Justice Kavanaugh didn't do it in his concurrence, and Bruin footnote 9 just basically said these could require a background check for carry permits, and we don't call into question the 43 states. So I would say that it's different, Your Honor, and we're not here asking for all background checks to be unconstitutional. We're asking for 18 to 20-year-olds to be treated the same. There's just a couple other points that I'd like to make. What was the reason that there had to be an amendment to the Constitution to go from having to be 21 to vote to having to being allowed to be 18 and vote? I'm not sure I understand the question. I'm sorry. Well, you're saying 18 to 20-year-olds are, like, always the same, and my memory is, not on voting, you had to be 21, and then they changed that to 18. So I'm not saying that 18 to 20-year-olds are always the same. There is, I don't think, any question that they were defined. If you go to the bar, you'll find out they ain't the same, but anyway, go ahead. What I'm saying is, if we look at historically what 18-year-olds to 20-year-olds were allowed to do, in the original colonies, the Militia Acts required 18 to 45-year-olds to muster for militia and bring rifles that they already owned or weapons that they already owned. I believe three of those colonies had an age down to 16, but just because they weren't considered full adults until they were 21, the age of majority, and during that time period, doesn't mean that they didn't have the right to contract, get married, be enrolled in the militia, and to do all of the other things that we would normally consider adult behavior, and there's no question now that, you know, 18 is the age of majority. I know they can't buy cigarettes and alcohol because they increase that age, but they can absolutely get married. They can absolutely change their gender, and they can absolutely join the military at 18. So I don't think that we should treat them differently simply due to their age and make them have to wait to exercise an enumerated right. Well, I was trying to look back, you know, because we're having to look back. If we were just looking at right now, I think it would be an easier case. It's a more difficult case for us to decide which way to go on this because of looking back, and even if I look elderly, I wasn't around in the 1700s, so it's a little harder to look back. Well, and as Bruin said, you know, the court is, I'm going to miss the quote off, but they decide on the case that's brought before them with the historical analysis that's been done. It's not up to the court to sift the record to see the historical statutes. The district court held that the government basically didn't meet their burden, but leaned hard into the dicta of the commercial qualifications on the sale of arms and Bruin footnote 9 and upheld it on that. And again, you know, the government has stated that, you know, up to 200 people, 200 young adults have been denied their attempted purchase, but that doesn't mean that the law is constitutional. You know, you can't have, if someone gets pulled over illegally, but the police find cocaine in the trunk, it doesn't constitutionalize the stop, right? So just because 200 people or thereabouts, and my friend can correct me if I'm wrong, doesn't mean that, well, this is a good law because we're not interest balancing. We have to go back to the founding. We have to go back and see, as Judge Jones did in the NRA v. ATF 2 dissent from en banc, a historical analysis to see if this regulation comports with the Second Amendment, and we submit that it doesn't. Thank you. Thank you, Mr. Stambelli. You've saved time for rebuttal. Thank you. Ms. Dixon? Good morning, and may it please the court, Courtney Dixon for the government. Just a few points of clarification to start out. The NICS background check that applies to all adults for commercial sales allows investigators up to three business days to search for records, and after that point, as here, it's up to the discretion of the dealer if the background check isn't complete. Plaintiff's core theory in this case, in which they sought a preliminary injunction, a nationwide preliminary injunction to enjoin these provisions, is that any wait at all for a background check to be completed facially violates the Second Amendment. The district court correctly recognized that that would implicate any background check that the federal government is performing, and that it cannot be reconciled with the Supreme Court's statements in Bruin. The Supreme Court said that nothing in its analysis was intended to suggest the unconstitutionality of shall issue provisions such as background checks, and it said it did not rule out constitutional challenges in circumstances in which they're put towards abusive ends. The district court correctly held that plaintiffs had made no such showing here. I'm happy to answer any questions that the court has specifically. Well, I mean, do you want to respond to the conversation I had with your opponent? What is your response to the fact that the Second Amendment doesn't mention buying, but as he said, if that's going to get thrown out the door, well, then heck, it's going to be hard to keep and bear, isn't it? Yeah, a few things to that. One, I mean, you know, every time that the Supreme Court has canvassed the Second Amendment, both its text and its history, it is made clear that the right is not unlimited. In Heller, the Supreme Court, you know, went out of its way to say it was not casting doubt on conditions and qualifications on the commercial sale of arms. This does apply only to commercial firearm sales from federally licensed dealers, and it's intended to respond to a uniquely modern problem, as your Honor's question suggested. I mean, today, an individual can go to a big box store and have their pick of firearms from, and purchase them from a stranger who does not know them. Background checks, again, particularly these, which respond to commercial firearm sales, that particular transaction, that's what this is trying to address. The Supreme Court statements in Heller, the Supreme Court statements in Bruin, all, again, strongly suggest that plaintiff's core theory in this case, that they have a constitutional right to commercially purchase a firearm instantly, which, you know, plaintiffs don't define, and again, would implicate the mixed background checks that apply to all purchasers. The court correct, the district court correctly rejected that argument. Well, and I'm well aware of, you know, what happened in Ubaldi, and so on and so forth. And that there are issues of, you know, 18 year olds going around shooting a bunch of people, but there's also issues of people in their 20s, 30s, 40s, 50s, 60s, 70s, whatever, shooting people. So, it is not as if only the 18 to 20 year olds are the people that are shooting a massive group of people. So, why should we focus on them? You know, after the shootings in Ubaldi, at the shootings in Buffalo, you know, Congress got together on a bipartisan basis. They debated legislative proposals, and they, you know, chose that one important step to better ensure that firearms are not sold to prohibited persons was to, you know, with respect to under 21 year old purchasers, this group that's disproportionately involved in violent crime, supplement the existing background check process to check three additional state sources for disqualifying juvenile justice and mental health records. That would show that these individuals are prohibited under existing firearm prohibitions that plaintiffs do not challenge here. That was, again, the step Congress chose, bipartisan, to address this problem. Could they have gone further? Sure. I mean, this type of background check provision, again, doesn't—plaintiffs do not have a constitutional right to commercially purchase a firearm instantly. Is it—is it your—is it your view that—the view of the Department of Justice that we have to reach the historical analysis, or can you prevail without our reaching that analysis? So, at the threshold, the first question is whether plaintiff's intended course of conduct, you know, is within the scope, the text of the Second Amendment. You know, Bruin gave explicit guidance to courts and legislatures about, you know, this question here, and that, you know, at a minimum, strongly suggests the court does not believe that plaintiff's intended course of conduct is within the scope of the Second Amendment. I mean, the court, you know, in Bruin, it was considering the proper cause requirement that licensees had to show a special need for self-defense over and above that of the general public to obtain a public carry license. The court said that prevented individuals from—ordinary law-abiding individuals from exercising their right to public carry, but the court distinguished that from, you know, the shall issue licensing regimes of a majority of states that have objective requirements such as background checks that are intended only to ensure that firearms are kept only by law-abiding responsible citizens. And the court did not think that, at least on a general facial basis, that that infringed the right. So, I mean, I think at the first step, you know, whether plaintiff's course of conduct is within the scope of the Second Amendment, we have strong and compelling guidance from the Supreme Court very recently that no, the court does not think that it is, and, you know, to put a finer point on it, Justices Kavanaugh and the Chief Justice in their concurrence referred to such provisions as constitutionally permissible. Okay, but you're not arguing that if, if the Congress passed a rule that said you have to wait a year to get a gun during which you have to keep saying every day that you haven't done anything wrong and so on and so forth, that that might be a bit too much. Yeah, I think that, again, the Supreme Court's language, it did not rule out constitutional challenges to such regimes where they're put towards— Like an abusive one. Right, and that's what your hypothetical suggests. And what, so where is that cubby? I mean, I know that the Fourth Circuit one has, has gone en banc, but it felt like 30 days was too much. So what's the cubby on what becomes abusive versus what makes sense? Right. So a few things. I mean, first, with respect to that provision, you know, the court is considering that en banc. I just say that with that provision, it was a 30-day regime that applied to, you know, any transfer, sale, gift, loan, and it also was a 30-day transfer before having an another seven-day background check. And here, of course, you know, 10 business days is quite shorter than that. I'll also say, you know, it's not just the number of days I think in the abstract. I would emphasize several parts of this scheme in particular. I mean, first, at the outset, the statute directs investigators to immediately contact these three state sources for information. It says, as soon as possible, but in no event more than three business days. Investigators have to get back with one of three responses, approved, denied, or a determination that cause exists for further investigation, and then it says, as soon as possible, but in no event more than 10 business days, and you make the final determination. So at every step, this statute is directing investigators to act as soon as possible. There is no minimum wait, and plaintiffs refer to a minimum wait. There is not. If, you know, NICS gets the information that it needs, it will transmit the response to the dealer. There's no reason to wait. There's no minimum waiting time. And so in this context, I think, you know, absolutely, as the district court held, plaintiffs have just not made a showing that this falls into the kind of provision that Bruin thought would present a constitutional concern. I don't think, I'm sorry, so your answer to Judge Smith is we don't have to get to the historic. I think this Court can answer it on the first step, yes. All right. Thank you, Ms. Dixon. Thank you. Mr. Stamboulida for rebuttal. I think, Your Honor, may I proceed? Thank you. I just have a couple of things to point out. Judge Haynes, I think you hit the nail on the head. If this is constitutional for 18- to 20-year-olds, as my friend here says, that they can go further, then what is the limit? They're going to say, well, you know, a year might be too long, or 30 days in the Fourth Circuit might be too long. I submit that Bruin is the limiting principle here. Bruin commands us to go back and look at the text, history, and tradition, and if the founders would not have allowed a 3- to 10-business day waiting period, then we shouldn't allow it either as a faithful application of Bruin. And I can demonstrate that using Bruin. Only if a firearm regulation is consistent with this nation's historical tradition may a court conclude that the individual's conduct falls outside of the Second Amendment's unqualified command. Now, my friends talked about, well, they could just go buy a gun from a stranger. And that seems bizarre, because the whole purpose of the Bipartisan Safer Communities Act, as they stated, is to prevent felons in the mentally ill. Well, what kind of fit is that with the purpose to tell us to go buy guns from a stranger? Well, I mean, we already have that issue that commercial, you know, licensed places, federally licensed places are not the only place you can get guns. That's already an issue, but that's not at issue here. And my understanding is you can discriminate against, I'm not saying under the Constitution, but I'm just saying we don't have discrimination rules under 40 for discriminating based on age. Of course, there's many other, when I said you can discriminate, I don't mean in general. I mean on the issue of age. So the fact that you can't go down to the bar if you're 20 here in New Orleans and have yourself a nice wine is not considered discrimination the way that firing somebody because they're 45 is discrimination in the U.S. Well, it's presumptively discrimination, too, but the employer can come back and provide legitimate non-discriminatory reasons. No, and I understand that, but what I'm saying is if I said I'm firing you because you're 45, which I would never say, so that's of course, that would be discrimination, but if I said I'm firing you because you're 18, it would not be. It would not be under the act, per se, discrimination. But going back to your Honor's example about the age discrimination, it's presumptively unlawful, right, if you go in there and say that you're firing me because I'm 45, but you could also ... Because 40 and above is ... That's right. That's right. So I mean ... Not under 40, which 18 to 20 is under 40, as you ... That's right. But if we're talking about these presumptive constitutional statutes in Bruin or if we're talking about something that's presumptively constitutional, just because there's a presumption doesn't mean we can't rebut that presumption. So like in the Title VII context with McDonnell Douglas, the employee makes their prima facie case, finds that she has protected conduct that she's been discriminated against, then the employer steps in and the burden shifts to him. And that's kind of how I see ... And it's not a perfect example, but that's kind of how I see Bruin's requirement to get past the first prong and then go and do a historical analysis. If we take the Second Amendment, we have the people, and they did in the district court say that 18 to 20-year-olds don't have a Second Amendment, right? They've walked that back a lot in their appellate briefing where they don't really specifically make that claim. They kind of imply it. But courts around the country are holding this 18 to 20-year-olds have Second Amendment rights. So Ethan and Kaylee are part of the people, and so then you have to say, is their conduct protected by the Second Amendment? And as I explained earlier, if they can't acquire guns, they cannot keep and bear. And there's a question, well, whether or not they can go buy it from a stranger. It seems to defeat the purpose of the act, which is to prevent guns from getting in the hands of mentally ill and the felons. But I'd submit to you, Your Honor, Congress already has this system, this NICS system set up where any one of us can go in, assuming we're all over 21, we can all go in and immediately get our gun, almost like 95% of the time. Well, your opponent suggested otherwise on how immediate it is. It's just they're adding more places you have to look. Let me ask you one other thing quickly. Does it make a difference if historically the length of time that you're alive has changed and people's sort of timing as young has also sort of changed over the centuries to where, you know, 45 is considered young, and I think 200 years ago, not so young? Your Honor, I will admit I have not looked into that specific issue. So I would, I really don't have an answer for you. Thank you very much. Thank you, Mr. Stavridis.  Next case, please.